LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT SKIBA, *on behalf of himself, FLSA Collective Plaintiffs and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>43-43 KISSENA, LLC,<br>43KISSENA43, LLC,<br>PERRY E BERGER,<br>JOHN M DOWNING,<br>JOHN M DOWNING, JR.,<br>ANDREW LIBASCI,<br>ROBERT EISENOFF, and<br>HARRY EISENOFF,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff ROBERT SKIBA ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants 43-43 KISSENA, LLC, 43KISSENA43, LLC ("Corporate Defendants"), PERRY E BERGER, JOHN M DOWNING, JOHN M DOWNING, JR, ANDREW LIBASCI, ROBERT EISENOFF, and HARRY EISENOFF ("Individual Defendants," together with Corporate Defendants, the "Defendants"), and states as follows:

**INTRODUCTION**

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.      Plaintiff further alleges on an individual basis that he was deprived of his statutory rights as a result of Defendants' unlawful discrimination practices based on religion in violation of the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL") and brings this action against Defendants to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b) as Corporate Defendants reside in this district and the events giving rise to Plaintiff's claims occurred herein.

6.      Plaintiff is part of the Union, "Service Employees International Union Local 32BJ," and as such, he is subject to the Union's Collective Bargaining Agreement ("CBA"). However, as the CBA does not contain any clear and unmistakable waiver of Plaintiff's right to pursue his statutory claims in court, Plaintiff properly brings his claims in this Court.

## PARTIES

7.      Plaintiff, ROBERT SKIBA, is a resident of Queens County, New York.

8.      Defendants are real-estate investors, buying, selling, and developing properties, as well as providing property management for residential and commercial properties in New York and Connecticut including a commercial and residential property located at 43-43 Kissena Boulevard, Flushing, New York 11355 (the "Condominium"). The Condominium contains approximately ninety (90) units. Plaintiff performed most of his porter/maintenance worker duties at this property.

9.      Corporate Defendant, 43-43 KISSENA, LLC, is a domestic limited liability company with its principal place of business at 43-43 Kissena Boulevard, Flushing, New York 11355 and address for service of process located at 42-08 Bell Boulevard, Bayside, NY 11361. Corporate Defendant 43-43 KISSENA, LLC owns and operates the Condominium.

10.     Corporate Defendant, 43KISSENA43, LLC, is a domestic limited liability company with its principal place of business at 43-43 Kissena Boulevard, Flushing, New York 11355 and address for service of process located at 42-08 Bell Boulevard, Bayside, NY 11361. Corporate Defendant 43KISSENA43, LLC owns and operates the Condominium.

11.     Individual Defendant PERRY E BERGER is the owner and executive officer of the Corporate Defendants. Individual Defendant PERRY E BERGER exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Individual

Defendant PERRY E BERGER exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees of the Defendants could complain to Individual Defendant PERRY E BERGER directly regarding any of the terms of their employment, and Individual Defendant PERRY E BERGER would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

12.     Individual Defendant JOHN M DOWNING is the owner and executive officer of the Corporate Defendants. Individual Defendant JOHN M DOWNING exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Individual Defendant JOHN M DOWNING exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees of the Defendants could complain to Individual Defendant JOHN M DOWNING directly regarding any of the terms of their employment, and Individual Defendant JOHN M DOWNING would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

13.     Individual Defendant JOHN M DOWNING, JR. is the owner and executive officer of the Corporate Defendants. Individual Defendant JOHN M DOWNING, JR. exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs

and the Class. Individual Defendant JOHN M DOWNING, JR. exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees of the Defendants could complain to Individual Defendant JOHN M DOWNING, JR. directly regarding any of the terms of their employment, and Individual Defendant JOHN M DOWNING, JR. would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

14.     Individual Defendant ANDREW LIBASCI is the owner and executive officer of the Corporate Defendants. Individual Defendant ANDREW LIBASCI exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Individual Defendant ANDREW LIBASCI exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees of the Defendants could complain to Individual Defendant ANDREW LIBASCI directly regarding any of the terms of their employment, and Individual Defendant ANDREW LIBASCI would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

15.     Individual Defendant ROBERT EISENOFF is the owner and executive officer of the Corporate Defendants. Individual Defendant ROBERT EISENOFF exercises operational

control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Individual Defendant ROBERT EISENOFF exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees of the Defendants could complain to Individual Defendant ROBERT EISENOFF directly regarding any of the terms of their employment, and Individual Defendant ROBERT EISENOFF would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

16.    Individual Defendant HARRY EISENOFF is the owner and executive officer of Corporate Defendants. Individual Defendant HARRY EISENOFF exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Individual Defendant HARRY EISENOFF exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees of the Defendants could complain to Individual Defendant HARRY EISENOFF directly regarding any of the terms of their employment, and Individual Defendant HARRY EISENOFF would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

17.    Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the

6

employees of Defendants handles goods and materials produced outside of New York (including vehicles, tools, cleaning supplies, and other items) that have moved in interstate commerce, and the Defendants are thus employers subject to the jurisdiction of the FLSA.

18.    At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

19.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

20.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

<u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>

21.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to laborer, porters, concierges, superintendents, handymen, plumbers, electricians, custodians, doormen, excluding managers and supervisors) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

23.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

24.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to construction workers, porters, concierges, superintendents, handymen, plumbers, electricians, and custodians, excluding managers and supervisors) employed by Defendants on or after the date that is six (6) years before the filing of this Complaint (the "Class" or "Class Members").

25.     At all relevant times, Plaintiff and Class Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of Class Members.

26.     Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

27.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

28.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subject to Defendants' corporate practices of (i) failing to pay wages including overtime wages for all hours worked due to time shaving, (ii) failing to provide Class Members with proper wage statements with every payment of wages, and (iii) failing to properly provide wage notices to Class Members, at date of hiring and dates of all wage changes, per requirements of the NYLL.

29.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

31.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a

corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.     Defendants and other employers throughout the country violate their respective states' labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a)    Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

b)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c)    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d)    Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

e)    Whether Defendants paid Plaintiff and Class Members for all hours worked given Defendants' time shaving practices;

f)    Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL; and

g)    Whether Defendants provided proper wage notices to Plaintiff and Class Members per requirements of the NYLL.

## STATEMENT OF FACTS

*Wage and Hour Allegations:*

34.    In or about June 2006, Plaintiff was hired by Defendants to work as a maintenance worker/porter for one of Defendants' developments, Kissena Gardens Condominium (the "Condominium"), a large property complex with over 90 residential and commercial unity.  As part of Plaintiff's duties, he is assigned to clean and maintain for all units within the Kissena Gardens Condominium located at 4343 Kissena Blvd., Flushing NY 11355. Moreover, Plaintiff is often transferred to Defendants' other developments to perform various tasks. Currently, Plaintiff is still employed by Defendants.

35.    Throughout his employment, Plaintiff was paid at various rates. Plaintiff is currently being compensated at an hourly rate of $27.76 weekly by check.

36.    Throughout his employment, Plaintiff had an official work schedule of five (5) days a week, Mondays through Fridays, from 8:00 am to 4:00 pm for a total of forty (40) hours per week.  However, Plaintiff was frequently required to work beyond his scheduled hours but was never be compensated for it, as Defendants never track Plaintiff's time. As seen on Plaintiff's Paystubs attached as **Exhibit A,** Defendants always compensated Plaintiff for exactly forty (40) hours every work week despite requiring Plaintiff to perform various tasks outside of Plaintiff's work scope and schedule as detailed below.

37.    Throughout his employment, Plaintiff was required to work every Sunday for four (4) hours despite being scheduled to work only from Mondays to Fridays. Plaintiff's supervisor, Richard Pyz ("Supervisor Pyz"), required him to clean around the building and throw out garbage during Sundays. Plaintiff was never paid for his work performed on Sundays.

38.    Additionally, Plaintiff was required to work one (1) to four (4) hours after his scheduled shift every workday. However, Defendants never tracked these hours and as a result, Plaintiff was never compensated for the extra work he did during his "off" time. After his scheduled hours, Plaintiff was required to perform various tasks outside of his job scope which include but are not limited to the following: (1) climbing a 30-feet ladder to cut down trees; (2) repairing air conditioning metal screen covers from outside the building using the same 30-feet ladder without any safety harness; (3) fixing the roof of the Condominium and Defendants' other developments located at Long Island, Connecticut, Jamaica, Forest Hills without any proper permit and equipment; (4) roof pointing wherein Plaintiff had to cut joints between bricks without any proper equipment; (5) install security camera systems with over 30 cameras; (6) removing asbestos from pipes without any proper equipment despite Defendants hiring an asbestos company to do it; (7) travelling to Defendants' Long Island development to remove asbestos tiles; (8) gardening; (9)

repairing; (10) painting; (11) constructing and demolishing; (12) building new walls; (13) installing tiles in the bathroom, (14) performing electrical work, (15) installing kitchen cabinets and baseboards, (16) plumbing, (17) renovating apartments, (18) fixing windows, (19) replacing subfloors, (20) installing vinyl tiles in elevators, (21) installing led lights in laundromats, (22) collecting money from laundry machines, among many other tasks. Plaintiff was left with no choice but to perform these tasks, even if it took longer than his scheduled shift, as Supervisor Pyz would threaten to fire Plaintiff if Plaintiff failed to follow his orders. Plaintiff was never paid for all the extra work after his work hours.

39.     Furthermore, during winter season, Plaintiff was required to work one (1) to two (2) hours prior to his scheduled shift to shovel snow at Defendants' various developments to ensure that the sidewalks were clear before the tenants woke up. Plaintiff was never paid for the pre-shift hours.

40.     Throughout his employment with Defendants, Plaintiff regularly observed and spoke to his co-workers about Defendants' pay practices and policies. Based on Plaintiff's direct observations and conversations with other employees, Plaintiff, FLSA Collective Plaintiffs and Class Members were subjected to the same unlawful employment practices of time shaving.

41.     Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime rate for all hours worked in excess of forty (40) in each workweek due to time shaving to Plaintiff, FLSA Collective Plaintiffs and Class Members as: (1) Defendants set Plaintiff's work schedule, (2) Defendants required to Plaintiff to work outside his scheduled shift despite knowing Plaintiff's schedule, (3) Defendants knew Plaintiff was working beyond his scheduled hours but only paid Plaintiff for his scheduled shift. *See* **Exhibit A.**

42.    Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

43.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

44.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp*., 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

45.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010

S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

46.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

47.    Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

48.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

49.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

50.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

51.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

52.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

53.    Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class

Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

54.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

55.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

56.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may

receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

57.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

58.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

*Plaintiff's Discrimination Claim*

59.     Throughout his employment, Plaintiff suffered from Defendants' unlawful discrimination practice based on religion. Plaintiff's emotional distress was an outcome of the discrimination he was subject to at Defendants' place of employment.

60.     Throughout his employment, Plaintiff's supervisor created and fostered a hostile work environment by discriminating Plaintiff because of his religion.

61.     Plaintiff is a member of the Roman Catholic Church. It is part of his religion's beliefs and practices to attend mass and rest every Sunday. However, because of his employment with Defendants, Plaintiff was unable to do so.

62.     Throughout his employment, Plaintiff was required to work on Sundays for at least four hours. This was strictly against his religion's beliefs. Therefore, Plaintiff asked his Supervisor Pyz if Plaintiff could only work during his official schedule which is Mondays to Fridays. However, Supervisor Pyz merely mocked Plaintiff and called Plaintiff "young and stupid."

63.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

64.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

65.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

66.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

67.     At all relevant times, each of the Corporate Defendants had gross annual revenues in excess of $500,000.

68.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs the full amount of wages due because of time shaving, including overtime wages, in violation of the FLSA.

69.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

70.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

71.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

72.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

73.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, due to time shaving, plus an equal amount as liquidated damages.

74.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

75.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein

76.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

77.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members the full amount of regular and overtime wages as a result of time shaving in violation of the NYLL.

78.     Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage statements as required under the NYLL.

79.     Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the NYLL.

80.     Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages due to time shaving, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

## AGAINST PLAINTIFF ROBERT SKIBA

81.    Plaintiff realleges and reavers all the above allegations of this Class and Collective Action Complaint as is fully set forth herein.

82.    Plaintiff is an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

83.    Defendants violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law §296, by engaging in discriminatory practices with respect to the terms, conditions, and privileges of their employment and subjecting them to a hostile work environment based on his religion.

84.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

85.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

86.    As a result of Defendants' unlawful employment practices, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

87.    Due to Defendants' violation under the NYSHRL, Plaintiff is entitled to recover from the Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

**COUNT IV**

**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**

**AGAINST PLAINTIFF ROBERT SKIBA**

88.     Plaintiff realleges and reavers all the above allegations of this Class and Collective Action Complaint as if fully set forth herein.

89.     Plaintiff is an employee and a qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

90.     Defendants violated Plaintiff's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York §8-107, by engaging in discriminatory practices with respect to the terms, conditions, and privileges of their employment and subjecting them to a hostile work environment based on his religion.

91.     The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

92.     Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

93.     As a result of Defendants' unlawful employment practices, Plaintiff sustained injury, including economic damages, past and future emotional distress, and the costs of bringing this action.

94.     Due to Defendants' violations under the NYCHRL, Plaintiff is entitled to recover from the Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including overtime, due to timeshaving under the FLSA and NYLL;

d.  An award of economic damages, compensatory damages, and punitive damages due under NYSHRL;

e.  An award of economic damages, compensatory damages, and punitive damages due under NYCHRL;

f.  An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

g.  An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the NYLL;

h.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.  Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiff as Representative of the Class; and

l.    Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: July 17, 2024                    Respectfully submitted,

                                        LEE LITIGATION GROUP, PLLC

                                        By:  */s/ C.K. Lee*                         

                                        C.K. Lee, Esq. (CL 4086)
                                        148 West 24th Street, Eighth Floor
                                        New York, NY 10011
                                        Tel.: (212) 465-1188
                                        Fax: (212) 465-1181
                                        *Attorneys for Plaintiff,*
                                        *FLSA Collective Plaintiffs,*
                                        *and the Class*